UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                         Case No. 21-cr-20461
                         Hon. LINDA V. PARKER

vs.

DION DAVIS,

       Defendant.

_____/

ROBERT VANWERT
United States Attorney's Office
Violent and Organized Crime Unit
211 W. Fort Street, Suite 2001
Detroit, MI 48226
313-226-9776
Email: Robert.VanWert@usdoj.gov

BARBARA LANNING
United States Attorney's Office - Detroit
Major Crimes Unit
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Email: barbara.lanning@usdoj.gov

SANFORD A. SCHULMAN
Attorney and Co-Counsel for Defendant:
     DION DAVIS
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net

_____/

## DEFENDANT, DION DAVIS'S
## SENTENCING MEMORANDUM

NOW COMES the Defendant, DION DAVIS, by and through his attorney, SANFORD A. SCHULMAN and states in support of his SENTENCING MEMORANDUM as follows:

## BACKGROUND AND PROCEDURAL HISTORY

The defendant, DION DAVIS, pled guilty to five different firearm offenses. None of the firearm charges require mandatory minimum sentences. Dion has not been charged with any assaultive offenses, conspiracy charges or racketeering type charges. Despite the statements in the Government's sentencing memorandum, it was the Government that charged the defendant with various firearm charges and dismissed count four of the indictment. Probation calculated the advisory guidelines using 20 points for the base offense level and applied a two-point enhancement because probation was advised by the Government that he had posted several pictures purportedly holding firearms. Those photos, without any other evidence, added two points. After acceptance of responsibility and a criminal history of two which placed him in criminal history category II, probation has calculated the advisory guidelines at 33 to 41 months.

2

The Government has submitted two objections to the presentence investigation report.  Both were responded to by the defense and probation has adequately addressed both objections.

Dion Davis is 19 years old whose only criminal history points are from a misdemeanor assault and battery and a charge of aiding and abetting to the theft of a iPhone when Dion was 14 years old.  Dion received probation for both and successfully completed probation.

Dion has a fiancé and together they are raising their now two year old daughter Xaliah who has cardiac and other concerning medical issues.

A/B.  Nature and Circumstances of DION DAVIS's offense and His History and Characteristics

The presentence report accurately summarizes this case involving the possession of several firearms during police incidents and for social media posts which for the most part are simply youthful and immature acts of bolstering.  Dion has never been charged with any serious assaultive offenses and has never violated probation.

This is Dion's first significant case.  Since he has been removed from the environment he as living in and while being detained, he has clearly realized what is most important.  This Court is well aware of the poor judgment many juveniles exhibit.  Their brains have not fully developed.

3

Indeed, Columbia Law School Professor Elizabeth S. Scott has provided considerable research on how adolescent brain functioning differs from that of adults and how such differences may affect behavior and decision making. Scott, co-author of the award-winning book Rethinking Juvenile Justice, is part of The MacArthur Foundation Research Network on Law and Neuroscience, which was created in 2007 to study the effects of modern neuroscience on criminal law and to make neuroscience more accessible and beneficial to the courts.

"The idea is, because of their immature brains, adolescents may be more likely to engage in reckless and sensation-seeking behavior—and to get involved in criminal activity," she explained.

In April, Scott and University of Virginia School of Law Professor Richard J. Bonnie, who is also part of the network, published "The Teenage Brain: Adolescent Brain Research and the Law" in Current Directions in Psychological Science. They describe the emerging importance of brain science in the U.S. Supreme Court and other policy arenas but argue it is still too early to extend current research to individual adolescents facing criminal charges.

Recent U.S. Supreme Court rulings have also helped shift public opinion— and the court itself seems to be impressed with brain research. In 2012, the high court cited Scott and her Rethinking Juvenile Justice co-author Laurence Steinberg in Miller v. Alabama, holding that a state cannot impose a life-without-

parole sentence for juvenile homicide offenders on a mandatory basis. That decision followed a 2010 ruling in Graham v. Florida that juvenile offenders could not be sentenced to mandatory life-without-parole for non-homicide offenses. Both those cases came on the heels of Roper v. Simmons, a 2005 case that abolished the death penalty for juveniles. While Roper pointed to behavioral studies, both Graham and Miller cited adolescent brain research in support of the conclusion that juveniles, because of their developmental immaturity, are presumptively less culpable than adults.

"I think paying attention to adolescent development in formulating responses to juvenile crime will result in a fairer justice system—one that promotes social welfare better than a system that treats juveniles like adults," she said.

C. GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

Probation considered the Government's request for enhancement based on "avoiding or fleeing from arrest" noting that § 3C1.1, Application Note 5, lists a non-exhaustive list of examples of the types of conduct to which this applicable note applies. Application Note 5(D) lists "avoiding or fleeing from arrest." Therefore, the probation department does not believe this rises to the level of enhancing for Obstruction or Impeding the Administration of Justice, pursuant to §3C1.1.

The defense would concur with probation's analysis and conclusion

Similarly in regard to the Reckless Endangerment enhancement, the probation department opined that when the defendant threw the firearm into the office that it did not create a substantial risk of death or serious bodily injury. Probation noted that a Glock firearm is equipped with three automatic independently-operating mechanical safeties which have to all be disengaged sequentially as the trigger is pulled to fire a bullet, and all three safeties automatically re-engage when the trigger is released. It is highly improbable a Glock firearm would discharge if thrown. In addition, the agents were right behind the defendant and swiftly recovered the firearm.

The defense would similarly concur with probation's analysis and conclusion.

D.  Need for Adequate Deterrence, 18 U.S.C. § 3553(a)(2)(B)

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent

6

effects"); Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 2829 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected.  The guidelines' offense level is not intended or designed to predict recidivism."  U.S. Sent'g Comm'n, Measuring Recidivism:  The Criminal History Computation of the Federal Sentencing

7

Guidelines, at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"].  See also Part IV.A.3, infra.  And according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions."  Francis T. Cullen et al., Prisons Do Not Reduce Recidivism:  The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).   Nor does lengthy imprisonment of sentences have any real deterrent effect.

Much of the Government's arguments are based on social media posts and the purported statements of Dion.  In reality, Dion has little assaultive history and since his arrest has shown that he has been significantly deterred from criminal activity.  This has been a life changing event for Dion and he and his family have grown closer and committed to working together to focus on Dion's education and supporting his young family.

E.  Need for Incapacitation, 18 U.S.C. § 3553(a)(2)(C)  and a sentence that is sufficient but not greater than necessary.

The Commission's research also demonstrates that employment, education, and family ties and responsibilities all predict reduced recidivism  A significant custodial sentence will not serve any purpose.  This has been the event that has significantly impacted Dion and his family.

Despite the agreement of the parties, this Court is not bound by any sentence or sentence recommendation(s). This is not a sentencing agreement only a "joint recommendation." The agreement allowed for the dismissal of count four and to avoid a trial. This Court is not required to sentence in accordance with the recommendation of the parties but can consider the recommendation as well as the guidelines and all the factors to impose a sentence that is sufficient but not greater than necessary.

.       F.  LETTER(S) IN SUPPORT

At the time of the submission of this sentencing memorandum , the defense was awaiting receipt of various letters from family and other members of the community. Attached is the letter from Dion and provides insight into how the arrest, time spent in jail and time to mature has significantly changed Dion.

## CONCLUSION AND SENTENCING RECOMMENDATION

The defense would ask this court to consider the advisory sentencing guidelines, the recommendations of the parties, the lack of criminal convictions, the strong family support, the defendant's letter that provides insight into how he has been deterred, punished and has already started the process of rehabilitation in imposing a sentence that is sufficient but not greater than necessary.to accomplish the 18 USC Sec. 3553(A). Such a sentence would allow Dion the opportunity to continue his education, obtain gainful employment, support his new child and start

to contribute to his family and community in a meaningful way.  The sooner he can do this and prove to the court that he is, the better.

If this Court imposes and additional custodial sentence, the defense would ask for a recommendation for placement at the Milan facility and a recommendation to participate in various programs including the Residential Drug Abuse Program (RDAP)

Respectfully submitted,


s/Sanford A. Schulman
SANFORD A. SCHULMAN
Attorney for Defendant:
    DION DAVIS
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
saschulman@comcast.net

Date:  October 23, 2022